# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STANDARD SECURITY LIFE INSURANCE COMPANY OF NEW YORK and MADISON NATIONAL LIFE INSURANCE COMPANY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> FCE BENEFIT ADMINISTRATORS, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) No. 19 CV 64 ) ) Judge Ronald A. Guzmán ) ) ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiffs' second amended motion to confirm an arbitration award. Defendant opposes the motion as to Phase I of the award, and, in the alternative, moves to vacate the Phase I Award. For the reasons explained below, the Court grants plaintiffs' motion, denies defendant's motion, and confirms the arbitration award in its entirety.

## BACKGROUND

Plaintiffs, Standard Security Life Insurance Company of New York and Madison National Life Insurance Company, Inc., move under the Federal Arbitration Act, 9 U.S.C. § 9 ("FAA"), seeking confirmation of the "Partial Final Award - Phase I" (the "Phase I Award") and the "Final Phase II Award" (the "Phase II Award") (collectively, where appropriate, the "Awards") rendered by an arbitration panel in a dispute between plaintiffs and defendant FCE Benefit Administrators, Inc. ("FCE").

The Court previously set out the background of this case as follows:

> Pursuant to an Administrative Services Agreement, dated January 1, 2011, and an Amended and Restated Administrative Services Agreement, effective

January 1, 2015 (together, the "ASA"), FCE, a third-party benefits claims administrator, administered health insurance policies underwritten by plaintiffs. The ASA contained an arbitration provision that states: "In the event of any dispute between the parties which arises under this Agreement, except for a dispute arising under Section 17 [titled "Mutual Indemnification and FCE Insurance"], such dispute shall be settled by arbitration in accordance with the rules for commercial arbitration of the American Arbitration Association (or a similar organization) in effect at the time such arbitration is initiated . . . ." (ECF No. 28-1, ASA, at 16-17.) The ASA stated that one arbitrator would be chosen by each side and that those two arbitrators would together choose an umpire, all of whom would be active or retired disinterested executive officers of insurance or reinsurance companies. The ASA further stated: "The decision of the arbitrators shall be final and binding on both parties; but failing to agree, they shall call in the Umpire and the decision of the majority shall be final and binding upon both parties. Judgment upon the final decision of the arbitrators may be entered in any court of competent jurisdiction."

On May 21, 2015, plaintiffs terminated the ASA. On July 27, 2017, they initiated arbitration against FCE pursuant to the ASA's dispute-resolution procedures. Plaintiffs alleged that FCE breached several obligations under the ASA, including failing to timely and properly process healthcare claims, failing to remit premiums, and taking excessive and unearned administrative fees. Plaintiffs further alleged that FCE caused them to incur expenses in responding to Department of Labor subpoenas and caused regulatory penalties and fines to be imposed on Madison by the Texas Department of Insurance. FCE counterclaimed, contending that plaintiffs' termination of the ASA was wrongful.

The arbitration panel (the "Panel") consisted of two arbitrators and an umpire. The arbitration hearing was scheduled to begin on September 25, 2018. In early July 2018, FCE requested a continuance of this date for reasons related to discovery. On July 27, 2018, the Panel issued an Interim Order denying FCE's request for a continuance and further stating in pertinent part: "[FCE]'s motion for leave to file an amended counterclaim is granted. The counterclaims will be presented in a second phase of the Hearing which will take place in November/December of this year. For this phase FCE has to produce the documents requested." The Panel and the parties referred to this structure of the arbitration as "Phase I" and "Phase II."

An arbitration hearing was held on September 25 through 29 and October 25, 2018. On November 30, 2018, the Panel held a post-hearing teleconference to discuss the evidence presented at the hearing. The Panel requested the parties to submit a proposed award for Phase I. Each side submitted a proposed award; both proposed awards were titled "Partial Final Award." On December 31, 2018, the Panel issued its "Partial Final Award - Phase I," which states in full:

> The Panel in the above-captioned arbitration, duly appointed by mutual agreement of the parties, upon consideration of all documents, arguments, and evidence submitted by Petitioners [Standard] and [Madison]

2

> (collectively "Petitioners") and Respondent [FCE], and after having held a full hearing of Phase I of this arbitration from September 25 through September 29, October 25 and November 30, 2018 hereby renders its Partial Final Award as follows:
>
> 1. Petitioners were within their rights to terminate the amended Agreement for cause.
> 2. FCE shall pay to Petitioners the principal amounts due with respect to each Category of Damages as set forth in the chart annexed as Exhibit A hereto, together with interest calculated thereon at the rate of 5% per annum, as set forth therein. Such payment shall occur within twenty (20) business days of the date of this Partial Final Award. After such time, interest shall run at 9% per annum.
> 3. Each party shall bear its own costs, including the costs of its party-appointed arbitrator. The parties shall split equally the costs of the Umpire and the catering expenses associated with the Hearing.
> 4. The Panel members shall be paid within thirty (30) days of the date hereof.
> 5. All other claims for relief by the parties are denied.
>
> Exhibit A to the Award, a chart titled "Damages Owed to Petitioners," provides for a total damages award to plaintiffs of $5,348,352.81.

(ECF No. 35, Mem. Op. & Order (Mar. 13, 2019) (footnote and some citations omitted).)

On January 3, 2019, plaintiffs filed a motion with this court to confirm the Phase I Award under the FAA. In response, FCE argued that plaintiffs' motion was premature, and, in the alternative, moved to vacate portions of the Phase I Award under 9 U.S.C. § 10. While those motions were pending in this Court, Phase II of the arbitration was proceeding. FCE moved the Panel for various forms of relief related to Phase II. (ECF No. 36-10, Email, at 2.) It also moved for the issuance of a "written and reasoned award" for both phases; the Panel denied that motion. On January 18, 2019, FCE moved the Panel for reconsideration of the Phase I Award; the Panel denied that motion on February 28, 2019. The Panel held the Phase II arbitral hearing from February 11 through February 15, 2019.

3

On March 13, 2019, this Court entered an opinion and order in which it determined that because the Panel was not yet done with its assignment, the matter was not ripe for adjudication. The Court dismissed the action without prejudice for lack of subject-matter jurisdiction. At the time the Court entered its opinion and order, it was unaware that two days prior, on March 11, the Panel had entered a "Final Phase II Award"; the parties had not informed the Court about that award. The Phase II Award states in full:

> The Panel in the above-captioned arbitration, duly appointed by mutual agreement of the parties, upon consideration of all documents, arguments, and evidence submitted by Petitioners [Standard] and [Madison] (collectively "Petitioners") and Respondent [FCE], and after having held a full hearing of the newly asserted claims in Phase II of this arbitration from February 11 through February 15, 2019, hereby renders its Final Phase II Award as follows:
> 1. FCE's claim for lost profits damages is denied.
> 2. Petitioners' claim for reimbursement of excessive administrative fees taken by FCE on limited medical benefits plans in the amount of $477,810.00 is denied.
> 3. Each party shall bear its own costs, including the costs of its party-appointed arbitrator. The parties shall split equally the costs of the Umpire and the catering expenses associated with the Hearing.
> 4. All other claims for relief by the parties are denied.
> 5. The Panel members shall be paid within thirty (30) days of the date hereof.

(ECF No. 36-5, Final Phase II Award.)

On March 13, after the Court issued its opinion, plaintiffs filed a motion for leave to reinstate the case and to file a second amended petition to confirm the Awards. The Court granted the motion and set a briefing schedule.

**DISCUSSION**

The FAA governs the enforcement of arbitration agreements. *Int'l Ins. Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392, 395 (7th Cir. 2002). Confirmation of arbitration awards is "usually routine or summary." *Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 692

4

(7th Cir. 2004) (citation and internal punctuation omitted). A court will uphold an arbitration award as long as the arbitrator "even arguably" construed or applied the contract and acted within the scope of his authority. *Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1025 (7th Cir. 2013) (emphasis omitted); *see also Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 563 (7th Cir. 2008) ("Factual or legal error, no matter how gross, is insufficient to support overturning an arbitration award."); *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 269 (7th Cir. 2006) ("It is tempting to think that courts are engaged in judicial review of arbitration awards under the [FAA], but they are not. . . . [I]n the typical arbitration . . . , the issue for the court is not whether the contract interpretation is incorrect or even wacky but whether the arbitrators had failed to interpret the contract at all . . . .") (citations omitted). An arbitral award may be set aside in only four circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); *Wise*, 450 F.3d at 268.

FCE does not object to plaintiffs' motion to the extent it seeks confirmation of the Phase II Award. It does object to confirmation of the Phase I Award and argues as an initial matter that there are two reasons the Court should deny confirmation. The first is that the Phase I Award, according to FCE, is "non-final and non-confirmable—effectively superseded and replaced by the Final Phase II Award," because this Court previously determined that the Phase I Award was

5

not ripe for judicial review, and the Phase II Award does not mention the Phase I Award and states that "[a]ll other claims for relief by the parties are denied." (ECF No. 47, Def.'s Opp'n at 5-6.) The Court is unpersuaded. For the proposition that the Phase II Award supersedes the Phase I Award, FCE cites a single, distinguishable decision of another district court, *AO Techsnabexport v. Globe Nuclear Services & Supply, Ltd.*, 656 F. Supp. 2d 550, 553 (D. Md. 2009), *aff'd sub nom. AO Techsnabexport v. Globe Nuclear Services & Supply GNSS, Ltd.*, 404 F. App'x 793 (4th Cir. 2010). In that case, the arbitral tribunal held "trifurcated" hearings on a breach of contract claim. After the first phase, it issued a partial award in favor of Globe, based on the conclusion that AO Techsnabexport ("Tenex") had breached the parties' contract. The tribunal held a second-phase hearing to determine damages, but deferred ruling given that it anticipated a third phase and the introduction of new evidence. This procedure was necessitated by an ongoing foreign criminal investigation related to Globe. New evidence regarding the validity of the contract was submitted, and the tribunal held a third phase of hearings to consider that issue. The tribunal ultimately issued a final award in which it held that the contract was invalid for fraudulent inducement. The district court granted Tenex's motion to confirm the final award and denied Globe's motion to confirm the initial partial award. The Fourth Circuit affirmed, explaining that the partial award did not "definitively dispose of any severable claim or constitute a final determination of the issues presented by the parties" and thus "was rendered moot by the tribunal's conclusion in the final award that the contract was not enforceable." 404 F. App'x at 800.

It does not follow from *AO Techsnabexport* that the Phase II award superseded the Phase I Award. The arbitral tribunal in that case followed the unusual procedure of considering the validity of the contract after it had ruled on the existence of a breach, and the ruling in the last

6

phase necessarily mooted the ruling in the first phase. Here, however, the Panel bifurcated the arbitration and decided discrete claims in each phase. The first phase addressed the original claims in the arbitration, and the second phase addressed "newly asserted claims." (Final Phase II Award at 1.) There is no basis in the procedural history of the arbitration or in the Awards themselves for concluding that the Phase II Award superseded the Phase I Award. The only reasonable conclusion from the record is that, while the Phase I Award was not final for purposes of review by this Court because the Panel had not yet completed its entire assignment, it was final as to the discrete issues of which the Panel disposed. The Court regards the Phase I and Phase II Awards, which stem from the same arbitration demand, as a single comprehensive award that did not become final for purposes of judicial review until the entry of the Phase II Award, when the Panel was finished with its assignment. *See, e.g.*, *Wellpoint Health Networks, Inc. v. John Hancock Life Ins. Co.*, 547 F. Supp. 2d 899, 911 (N.D. Ill. 2008), *aff'd sub nom. WellPoint, Inc. v. John Hancock Life Ins. Co.*, 576 F.3d 643 (7th Cir. 2009).

FCE also contends that the Phase I Award cannot be confirmed because it was untimely under Rule 45 of the American Arbitration Association (the "AAA's") Commercial Arbitration Rules, which states that, unless otherwise agreed by the parties or specified by law, an award shall be made no later than 30 calendar days from the date of closing the hearing. FCE says that there was no agreement to change this requirement; the Panel declared the Phase I hearing closed on November 30, 2018; and the award was issued on December 31, "one day late." (Def.'s Opp'n at 7.) In reply, plaintiffs point to AAA Rule 39(b), which provides that if the arbitrator directs the filing of post-hearing documents, responses, or briefs, "the hearing shall be declared closed" as of the final date set by the arbitrator for the receipt of those materials. Plaintiffs note that after closing arguments, the Panel directed the parties to submit proposed awards, which

7

FCE did not submit until December 7, 2018 (ECF No. 50-7), so plaintiffs argue that the 30-day clock for the Panel's ruling ran from that date. In surreply, FCE contends, without support, that proposed awards do not constitute "documents or other evidence" under the AAA Rules. (FCE does not address whether a proposed award can be considered a "brief.") The Panel clearly believed it was necessary to obtain the parties' draft awards before issuing its ruling, so plaintiffs have the better of the argument. In any event, FCE did not raise an untimeliness objection before the Panel (despite moving for reconsideration), so it waived the issue. *See Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993) *("Failure to present an issue before an arbitrator waives the issue in an enforcement proceeding.")*.

FCE next asserts that the Court should set aside the Phase I Award under 9 U.S.C. § 10(a)(4) because the arbitrators exceeded their powers in three ways. The first is that the Panel considered, and awarded plaintiffs damages on, their indemnification claims, which FCE says the parties expressly excepted from arbitration under Section 18 of their contract.

Section 18, which is titled "Arbitration," states in pertinent part:

> (a) In the event of any dispute between the parties which arises under this Agreement, except for a dispute arising under Section 17, such dispute shall be settled by arbitration in accordance with the rules for commercial arbitration of the [AAA] (or a similar organization) in effect at the time such arbitration is initiated, in the manner set forth below. Should a dispute arise under Section 17 [which contains the parties' mutual indemnification obligations], either party may elect to invoke Section 19 below.

(ASA at 16-17.) Section 19, in turn, is titled "Submission to Jurisdiction" and states in pertinent part:

> (a) Any legal suit, action or proceeding arising out of or relating to Section 17 of this Agreement or the transactions contemplated hereby, *when invoked by either party*, shall be instituted in the federal courts of the United States of America or the courts of the State of Texas, in each case located in Dallas County, and each

> party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

(*Id*. at 17-18 (emphasis added).)

In FCE's view, the Panel's award of $1,025,470.36 on plaintiffs' indemnity claims must be vacated because it is outside the scope of the ASA's agreement to arbitrate. In reply, plaintiffs contend that Section 18 of the ASA calls for mandatory arbitration of all claims, except for claims under Section 17, which may be brought in federal court only if a party affirmatively elects to invoke such litigation under Section 19. Plaintiffs point out that after they initiated arbitration, FCE did not invoke Section 19, and it did not raise the issue of the arbitrability of plaintiffs' indemnification claims until it received an unfavorable ruling on those claims in the Phase I Award. In surreply, FCE argues that a party's sole "remedy" under the ASA for indemnity claims is litigation.[1] FCE also asserts that it did not waive its "right to enforce" Section 19 by participating in the arbitration without invoking that section; it cites Section 31 of the ASA, which provides that there can be no waiver of any contractual term or condition unless made in writing and signed by both parties. (ECF No. 51, Def.'s Surreply at 8.)

FCE would have the Court rely strictly on Section 18's phrase "except for a dispute arising under Section 17," which appears on first glance to unconditionally except indemnification claims from the parties' agreement to arbitrate. But it is axiomatic that the Court does not consider the phrase in isolation; it must read together the entirety of Section 18 in conjunction with Section 19, to which Section 18 refers. *See, e.g., Tougher Heating & Plumbing Co. v. State*, 73 A.D.2d 732, 733 (N.Y. App. Div. 1979);[2] *Foufas v. Dru*, 319 F.3d 284, 287 (7th

---

[1] The question is not one of remedies, however, but of forum.

[2] The ASA provides that it is subject to and construed under the laws of New York.

Cir. 2003) ("To read language acontextually is an almost certain route to error."). To the extent these sections of the ASA are ambiguous about the treatment of indemnity claims, their only reasonable reading is that the parties agreed to arbitrate such disputes, *unless* one of the parties elected to invoke its right to litigate them in federal or state court. FCE's interpretation of these provisions, under which it contends that plaintiffs "have it backwards," (Def.'s Surreply at 8), would leave a nonsensical gap in the ASA's treatment of the proper forum for indemnity disputes where a party does not elect to invoke its right to litigate under Section 19. Contracts are construed to avoid unreasonable results. *Gootee v. Global Credit Servs., LLC*, 139 A.D.3d 551, 560 (N.Y. App. Div. 2016); *Stone v. Doerge*, 328 F.3d 343, 346 (7th Cir. 2003) ("Ambiguous contracts should be read to make sense of the parties' economic relations. That rule of contract construction applies to arbitration agreements.").

FCE's reliance on the "no-waiver" clause is to no avail. Generally, a party to a written agreement may waive enforcement of one of its terms despite a provision to the contrary, and waiver may be demonstrated by words or conduct. *Taylor v. Blaylock & Partners, L.P.*, 240 A.D.2d 289, 290 (N.Y. App. Div. 1997); 13 Richard A. Lord, Williston on Contracts § 39:36 (4th ed. 2012) ("The general view is that a party to a written contract can waive a provision of that contract by conduct despite the existence of a so-called antiwaiver or failure to enforce clause in the contract."). FCE's position is also flawed from a policy perspective. Interpreting the "no waiver" clause to preclude a finding of waiver of court litigation of the indemnity claims under these circumstances would permit FCE to waste the Panel's time and effort and allow it to "test the water before taking the swim" by delaying its assertion of the right to a court forum until after having received an arbitral ruling. *See Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012); *see also Envtl. Barrier Co. v. Slurry Sys., Inc.*, 540 F.3d 598,

10

606 (7th Cir. 2008) ("Only after the arbitrator issued an award unfavorable to SSI and the case wound up in court did SSI raise an objection to the arbitrator's authority to decide the dispute. . . . This is not a tactic we can accept, for sound policy reasons. It is terribly wasteful of the arbitrator's time, the parties' time, and the court's time. . . . [K]eeping the arbitrability card close to the chest would allow a party like SSI to take a wait-and-see approach: if it had liked [the arbitrator's] decision, it would have remained silent, but since it did not, it is now complaining about arbitrability."). FCE's related suggestion that it did not know until September 2018, a few weeks prior to the Phase I hearing, that plaintiffs were asserting indemnification claims is belied by the record. Indemnification has been a central issue since the inception of the parties' dispute.

FCE contends that the Panel also exceeded its authority by "rewriting the ASA to reduce FCE's contractual administrative fee rate from 5.55% to 4.3%" and then "mislabeling" as "embezzlement" its damages award to plaintiffs of "the delta between the rates." (Def.'s Opp'n at 10-11.) This argument relates to the Panel's award of $550,000.00 to plaintiffs on their claim that FCE misappropriated from plaintiffs' premium trust accounts administrative fees that corresponded to 5.5 percent of gross collected premiums despite the parties having agreed to a 4.3 percent fee. The relevant provision at Schedule 1 of the ASA states that plaintiffs agreed to pay FCE an administrative fee equal to 5.55 percent on "SSL and MNL Large Group Health" business "written and/or renewed on or after 1/1/2014 unless otherwise provided by [plaintiffs] in writing." (ASA at 46.) The issue during the arbitration, therefore, was whether plaintiffs had so specified a different fee. FCE says that the evidence at the hearing was that plaintiffs never used "anyone with proper authority" to do so. (Def.'s Surreply at 10 (emphasis omitted).) In essence, FCE is saying that the Panel reached the wrong conclusion on this issue, and that it also

erred by labeling the corresponding category of damages as "embezzlement." These are not arguments that the Panel exceeded its powers, but mere disagreement with the outcome and semantics. FCE fails to demonstrate that the Panel based its award on anything outside the ASA, so there is no basis for vacating the relevant portion of the Phase I Award. *See Hyatt Franchising, L.L.C. v. Shen Zhen New World I, LLC*, 876 F.3d 900, 902 (7th Cir. 2017) ("[Section] 10(a)(4) does not make legal errors a ground on which a judge may refuse to enforce an award."); *Prostyakov v. Masco Corp.*, 513 F.3d 716, 725 (7th Cir. 2008) ("The question for decision by a federal court asked to set aside an arbitration award is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract.") (ellipsis omitted). For the same reason, the Court rejects FCE's arguments that the Panel's award to plaintiffs of $1,800,000.00 in "missing premiums" was "improper"[3] and that the Panel's award of 9 percent interest on the Phase I Award is "incorrect."[4] (Def.'s Opp'n at 12, 15.)

FCE's final argument is that vacatur of the Phase I Award is warranted under 9 U.S.C. § 10(a)(3) because the Panel denied its request to postpone the Phase I hearing and in Phase II declined to consider FCE's offer of proof in support of its "credit claims," which according to FCE "invalidate[s] the damages awarded in categories 5-6, and 8 of the interim Phase I award." (*Id.* at 13.) On July 13, 2018, several months into the arbitral discovery process and two months

---

[3]Furthermore, FCE's assertions that it was not given the opportunity during the arbitration to respond to plaintiffs' "missing premium" claim and that the Panel's award on this claim amounted to a "default" award or a "sanction" simply is not borne out by the record.

[4]As plaintiffs point out, AAA Rule 47(d) provides that an arbitrator may award interest at such rate as the arbitrator may deem appropriate.

12

prior to the Phase I Hearing, FCE moved to continue the hearing for nine months, arguing that the parties had not yet taken depositions; FCE did not "understand" plaintiffs' claims and needed more time to conduct written discovery; the parties had "outstanding document disputes"; and the parties needed more time "to vet and depose one another's experts." (ECF No. 48-3, FCE's Mot. to Continue Arbitration Hr'g Date at 4-7.) The same day, FCE moved for leave to submit an amended counterclaim. On July 27, 2018, the Panel issued an Interim Order denying FCE's motion for a continuance of the hearing, but extending the time for depositions and seeking more information about FCE's proposed expert testimony. The Panel also granted FCE's motion for leave to file an amended counterclaim and indicated that it would structure the arbitration in two phases, with the counterclaim presented in the second phase. Because FCE did not show sufficient cause for a postponement, the Court finds no misconduct on the part of the Panel. In its continuance motion, FCE relied on vague arguments about the need for additional discovery, without describing in particular what additional discovery was needed and why, or why nine additional months were necessary. FCE currently relies on a similarly vague argument that it suffered "palpable prejudice" from the denial of a continuance, without explaining in detail how it was adversely affected.[5] (Def.'s Opp'n at 3.) For instance, FCE complains that plaintiffs "largely thwarted" the depositions of eight witnesses, but concedes in a footnote that it was able to take all of those depositions shortly before the Phase I hearing. That counsel would have preferred to "concentrate on preparing for the hearing," (*id.* at 3 n.1), does not indicate prejudice. FCE also fails to explain specifically how the other alleged shortcomings in the discovery process adversely affected it.

---

[5]FCE also continues to profess confusion about the nature of plaintiffs' claims, (Def.'s Surreply at 12), which strikes the Court as disingenuous.

Similarly, FCE fails to demonstrate that its rights were prejudiced by any refusal to receive relevant evidence. Such a refusal, standing alone, does not warrant vacating an arbitration award; rather, FCE must show that the Panel's failure to consider pertinent evidence deprived FCE of a fundamentally fair hearing. *See Mical v. Glick*, 581 F. App'x 568, 570 (7th Cir. 2014). "This standard typically is met only when an arbitrator wrongly excludes the sole evidence on a pivotal issue." *Id.* FCE contends that due to the Panel's denial of its motion to continue the hearing, it had to "forgo . . . testamentary evidence" during the Phase I hearing, (Def.'s Opp'n at 14), but it fails to develop this argument by providing any detail. FCE also argues that in Phase II, the Panel unfairly denied its offer of proof of its "credit evidence" pertaining to the Phase I Award. (*Id.*) The record indicates, however, that FCE made a strategic decision not to present this evidence at the Phase I hearing, and, during the Phase II hearing, sought to re-open the issues decided in Phase I. FCE wanted a second bite at the apple, which the Panel denied. There was nothing fundamentally unfair about that decision. FCE also fails to develop argument as to exactly what evidence it intended to offer, again relying on generalities. FCE has not demonstrated that the Panel committed misconduct or that the Panel's actions caused it unfair prejudice.

## CONCLUSION

The Court grants plaintiffs' motion to confirm the arbitration award in its entirety [39], confirms the Phase I and Phase II Awards, and denies defendant's motion to vacate the Phase I Award [47].

**DATE**: June 6, 2019

_____
**Ronald A. Guzmán**
**United States District Judge**